## City of Philadelphia, Plff. in Err., *v.* H. E. Bickley.

The refusal of the comptroller of the city of Philadelphia, without any reason assigned and maintained, to countersign warrants delivered to one in payment for work performed under contract with the city, presents no legal objection to the right of such person to maintain an action against the city to recover the amount due under the contract.

Where plaintiff contracts to clean certain streets of the city for one year for a fixed sum payable in equal monthly instalments, if the comptroller refuses to countersign warrants to pay the instalments due during the first three months, plaintiff is justified in declaring the contract rescinded, and may maintain an action for the amount due him.

(Decided April 5, 1886.)

Error to the Common Pleas, No. 4, of Philadelphia County to review a judgment for plaintiff in an action upon a contract. Affirmed.

This action was brought by H. E. Bickley against the city of Philadelphia to recover the amount due under a contract for cleaning the streets of the city.

The jury under the instructions of the court found a verdict for plaintiff, the trial judge reserving a point of law for the consideration of the court *in banc.*

That court delivered the following opinion by ARNOLD, J.:

The plaintiff entered into a contract with the defendant for

---

NOTE.—The exercise of discretionary powers by a comptroller are not the subject of review. Dechert v. Com. 113 Pa. 229, 6 Atl. 229. But his discretion is legal, and the courts may determine whether he has exceeded his power. Com. *ex rel.* Century Co. v. Philadelphia, 176 Pa. 588, 35 Atl. 195. Where the duties are merely ministerial, the court may always interfere to compel the performance of them. Com. *ex rel.* Keller v. George, 148 Pa. 463, 24 Atl. 59, 61.

cleaning the streets and removing the ashes from the Twenty-Ninth ward of the city of Philadelphia, during the year 1884, under the supervision of the chief commissioner of highways, for the sum of $10,800, payable in equal monthly payments, except for the months of January, February, and March, when one half of the regular monthly instalments were to be paid, and the other half retained until the whole district should be cleaned to the satisfaction of the chief commissioner of highways; the payments to be made in city warrants drawn by the chief commissioner of highways upon the city treasurer, which warrants the plaintiff agreed to accept in payment as cash.

To secure the performance of this contract on the part of the plaintiff he deposited with the city treasurer the sum of $1,080 and gave personal sureties in addition. Under this contract the plaintiff entered upon his work, and at the end of January, February, and March, 1884, received bills approved by the chief commissioner of highways for the monthly payments due him; and on April 2, 1884, another bill similarly approved for the whole amount then certified to be due. When the plaintiff presented the warrants to the city comptroller for countersignature, that officer refused to countersign them. On April 6, 1884, the plaintiff declined to proceed further under the contract and on April 8, 1884, notified the chief commissioner of highways that his work was then stopped and ended and that suit would be brought for the amounts due; and that as the nonpayment had been caused by the refusal of the city comptroller, without legal cause, to countersign the warrants, the loss, if any, to the city, should be collected from the sureties of the comptroller. The next day the chief commissioner of highways notified the plaintiff that the comptroller would countersign the warrants for February and March, and inquired if the plaintiff wished to reconsider his action, accept pay for February and March and resume work. The plaintiff replied that, unless he could get his pay for the sum due him on April 1, he would not resume.

On April 16, 1884, the chief commissioner of highways notified the plaintiff that, unless he proceeded at once to clean the district, his contract would be annulled. This suit was then brought. No defense nor objection to the plaintiff's demand was made, except that the comptroller had refused to countersign the warrants.

The defendant claimed to set off the sum of $1,502.97, paid

for work done in the district by the defendant in the month of April, 1884; and $2,200 excess paid by the city during the remaining eight months of the year, over the amount due under the plaintiff's contract. The jury were directed to find for the plaintiff, reserving these questions: (1) Whether the plaintiff can recover upon the certificate of approval by the chief commissioner of highways, without having the countersignature of the city comptroller; (2) whether the refusal of the city comptroller to countersign the warrants to pay the bills for January, February, and March justified the plaintiff in declaring the contract rescinded, and entitled him to sue for those bills and his deposit money.

It must be conceded that the city comptroller is a county officer, so far as his election and commission, and in case of a vacancy in the office, so far as the appointment of his successor, is concerned. That question was put at rest by the decision of the supreme court in the case of Taggart v. Com. 102 Pa. 354.

But in regard to his duties he occupies the place of the former county auditor as to approval of bills against the county, and the place of the city comptroller under the municipality for the approval of bills against the city. Taggart v. Com. 102 Pa. 354.

That the boundaries of the city are commensurate with those of the county makes no difference. His authority is derived from one source; his duties and responsibilities are dual.

It may also be conceded that he is a quasi judicial officer, and that he cannot be controlled in the exercise of his judgment by either the city council or the city or county commissioners. Runkle v. Com. 97 Pa. 328.

The courts will command him to exercise his judgment in cases in which he has refused to do so, although it will not review and overrule his judgment when he has given it; and if he has given his judgment, the court will compel him to execute it; for while the giving of the judgment is a judicial act, yet when it has been exercised and the rights of a party have become fixed, then the carrying out of the judgment is a ministerial act, which may be enforced by mandamus. Marbury v. Madison, 1 Cranch, 137, 2 L. ed. 60; Com *ex rel.* Griffith v. Cochran, 5 Binn. 87; Bedford v. Anderson, 45 Pa. 388; Schlaudecker v. Marshall, 72 Pa. 200.

It is the duty of the city comptroller to examine and pass

judgment on all the claims against the city. He is to inquire whether the contract under which the claim is made was entered into according to law; whether there has been an appropriation to pay the claim; and to keep the aggregate of the claims within the appropriation. He may go further. If he has reason to believe, from his own observation, or from information given by others, that a fraud has been practised on the city, or that a claim is made without a just foundation, and that bills have been made out and approved without any work having been done or materials received, in consequence of the neglect or misconduct of the officers charged with the supervision of the work, he may, in the exercise of his discretion, refuse to countersign the warrant therefor. Com ex rel. Vandyke v. Henry, 49 Pa. 530.

But suppose he refuses to countersign without any reason whatever assigned and maintained, or for a reason which is unfounded in fact? Shall the creditors of the city go unpaid forever, and the public works be stopped by the mere refusal of the comptroller to examine the bills and approve them, if, in his judgment, they are correct, and to state his objections, if he disapproves of them, so that the objections may be answered or removed, if possible? It has never been so held.

On the contrary, the creditor may bring suit upon his claim, and then, when the objections of the comptroller are made known, if they are deemed sufficient, they will be enforced by the court. The number of such suits which have been brought in this county is legion. Even the judge who presides in such cases must give the reasons for his judgment, subject to review by the supreme court. If a judge has no right to say without reason and against reason that a just claim shall not be paid, why should the unsupported judgment of the comptroller have any greater weight to prevent the payment of a just debt? The court will not direct the judgment of the comptroller and command him to countersign a warrant so that payment may be obtained in that way; but it will give a judgment of its own and enforce it by mandamus on the city treasurer. Hester's Case, 2 Watts & S. 416.

The condition of a municipality subject to the unreasonable will of one man would soon become intolerable. He might stop the wheels of government altogether. We are of opinion, therefore, that the refusal of the city comptroller to countersign the

warrants delivered to the plaintiff under his contract, without reasons assigned and maintained, presents no legal objection to his right to recover in this suit.

The second question reserved should also be decided in favor of the plaintiff. The contract discloses an intent to sever in the payments, which were to be made monthly.

Mavor v. Pyne, 2 Car. & P. 91, was an action of assumpsit upon a subscription to a book published in numbers, and the court held that, although the contract was entire for the whole work in numbers, yet there was a subordinate contract to pay for each number on delivery; and the plaintiff had a verdict for the numbers delivered.

It is the consideration to be paid, and the time and proportions in which it is to be paid, and the intention of the parties, rather than the divisibility of the subject, which determines whether a contract is entire or severable. Shinn v. Bodine, 60 Pa. 182, 100 Am. Dec. 560; Lucesco Oil Co. v. Brewer, 66 Pa. 351; Morgan v. McKee, 77 Pa. 228; Quigley v. DeHaas, 82 Pa. 267; Scott v. Kittanning Coal Co. 89 Pa. 231, 33 Am. Rep. 753.

On the failure of either party to comply with the contract, the other may rescind and sue at once upon the breach. Reybold v. Voorhees, 30 Pa. 116; Forsyth v. North American Oil Co. 53 Pa. 168; Withers v. Reynolds, 2 Barn. & Ad. 882.

The present suit is in debt for the instalments due and the deposit money, and was properly brought. Had it been for damages for the breach of the contract, but one action could be maintained on it. Alcott v. Hugus, 105 Pa. 350.

The contract provided that the plaintiff should accept warrants in payment as cash. These warrants when carefully drawn on the treasurer of the city, under a contract properly entered into, against an appropriation duly made, were obligations of the city for work done on its account; and, on the failure of the comptroller to approve them and maintain his objections to them in court, the liability of the city under the contract remained unaffected, and that liability can be enforced by suit.

The plaintiff does not request us to place an obligation on the city which it never assumed, as was asked for in Horter v. Philadelphia, 13 W. N. C. 40, and Dickinson v. Philadelphia, 14 W. N. C. 367; but he asks us to enforce the duty of the defendant to pay what it has contracted to pay.

He agreed to receive payment in warrants as cash, and not monthly law suits for his money. His ability to perform his duty under the contract would be greatly impaired if he was required to give attendance in court to get the means to enable him to carry out his contract. The prime reason in support of the right of the vendor to rescind the contract, on nonpayment of the amounts becoming due as he proceeded, in Withers v. Reynolds, 2 Barn. & Ad. 882, was his need of prompt payment in order to enable him to continue the deliveries and fulfil his contract.

Were it not for the unsustained, and, as far as we know, the unfounded, refusal of the comptroller to countersign the warrants given to the plaintiff, he would have received the cash which his warrants called for, and could have performed his part of the contract, and this litigation and loss to the defendant would have been avoided. We think that the plaintiff is entitled to payment for what he did under the contract and a return of his deposit money.

Rule discharged, and judgment for the plaintiff on the points reserved.

The city brought error.

*Abraham M. Beitler* and *Charles F. Warwick,* for plaintiff in error.—This contract was entire, not divisible. Quigley v. DeHaas, 82 Pa. 267; Lucesco Oil Co. v. Brewer, 66 Pa. 351.

The contractor, having agreed to accept the warrants in payment as cash, was paid when he got the warrants. Horter v. Philadelphia, 13 W. N. C. 40; Dickinson v. Philadelphia, 14 W. N. C. 367.

The city has no power to contract to secure the approval of the comptroller, and a contract stipulating to pay in warrants which shall be approved and countersigned by that officer could have no binding effect whatever. But suppose the city could and did actually contract to pay in warrants approved and countersigned, would the failure on April 1, 1885, to pay $1,350, being the half of the pay for January, February, and March, be a rescission of the contract?

Cases somewhat analogous are Stoddart v. Smith, 5 Binn. 355; Graver v. Scott, 80 Pa. 88.

In England, however, the question has been ably discussed

and finally set at rest by the cases of Mersey Steel & I. Co. v. Naylor, L. R. 9 Q. B. Div. 648; Freeth v. Burr, L. R. 9 C. P. 208.

The rule established there is that stated in 2 Chitty, Contr. 1092, citing Franklin v. Miller, 4 Ad. & El. 599; Jonassohn v. Young, 4 Best & S. 296; Weaver v. Sessions, 6 Taunt. 155, and Keenan v. Brown, 21 Vt. 86: It is a clearly recognized principle that, if there be only a partial failure of performance by one party to a contract, for which there may be a compensation in damages, the contract is not put an end to. See also Bloomer v. Bernstein, L. R. 9 C. P. 588.

*David W. Sellers,* for defendant in error.—As the contract provided the specific sum to be paid, and as the item had been appropriated, and as the work had been done to the satisfaction of the chief commissioner of highways, the comptroller had no auditing or discretionary duties on the subject. His public duty was to countersign the warrant, that the workmen of the city should be paid. Philadelphia's Appeal, 86 Pa. 186; Com. v. Dechert, 16 W. N. C. 508.

Although it could be very well argued that the decision without fraud or mistake of the chief commissioner of highways under this contract was conclusive, yet certainly unless attacked by evidence, it did bind the city. Omaha v. Hammond, 94 U. S. 98, 20 L. ed. 70; Martinsburg & P. R. Co. v. March, 114 U. S. 549, 29 L. ed. 255, 5 Sup. Ct. Rep. 1035; Monongahela Nav. Co. v. Fenlon, 4 Watts & S. 208; Reynolds v. Caldwell, 51 Pa. 298; Malone v. Philadelphia, 12 Phila. 270.

PER CURIAM:

The opinion of the learned judge on entering judgment on the reserved question of law contains a clear and correct statement of the principles of law applicable to the facts of the case, and justifies the conclusion at which he arrived.

Judgment affirmed.